DECISION AND JUDGMENT ENTRY
Eugene Rich appeals the finding that he is a sexual predator and the imposition of maximum and consecutive sentences in the Pickaway County Court of Common Pleas. He assigns the following errors:
FIRST ASSIGNMENT OF ERROR
 The trial court erred in finding Mr. Rich to be a sexual predator, because the State failed to present sufficient evidence of both components of the statutory definition of a sexual predator. R.C. 2950.01(E). Mr. Rich was thereby deprived of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution. (Tr. 10/4/00, pp. 34-35).
 SECOND ASSIGNMENT OF ERROR
 The trial court erred in imposing the maximum sentence for the Obstructing Official Business charge in Case No. 2000-CR-075 without making the requisite factual findings on the record, as required by R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d). (Tr. 10/4/00, pp. 45-46).
 THIRD ASSIGNMENT OF ERROR
 The trial court erred in imposing a consecutive sentence for the Obstructing Official Business charge in Case No. 2000-CR-075 without making the requisite factual findings on the record, as required by R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c). (Tr. 10/4/00, p. 46).
In December 1999, appellant was indicted on one count of rape, one count of gross sexual imposition and one count of corruption of a minor. The case was scheduled for a jury trial in April 2000. On the day of trial, appellant requested a new court-appointed attorney and when the court denied this request, appellant assaulted his attorney in open court in front of the jury. The court was left with no alternative and continued the trial.
In May 2000, appellant was indicted on one count of intimidation, one count of obstructing official business and one count of inducing panic in conjunction with the assault of his attorney. The court appointed new counsel for the appellant, and in July 2000, he pled guilty to sexual battery and corruption of a minor in his initial case. He also pled guilty to the obstructing official business count in the second indictment. The remaining charges in both cases were dismissed and the cases were consolidated for sentencing.
In October 2000, the court conducted a combined sentencing and sexual predator hearing. After finding him to be a sexual predator, the court sentenced appellant to a four-year term of imprisonment on the sexual battery charge, a twelve-month term of imprisonment on the corruption of a minor charge, and a twelve-month term of imprisonment on the obstructing official business charge. The sexual battery and corruption of a minor sentences were ordered to be served concurrently to one another; however, the obstructing official business charge was to be served consecutively to the other two sentences. Appellant timely appealed his sentence and the sexual predator determination.
 I.
In his first assignment of error, appellant argues that the court's finding that he is a sexual predator is against the manifest weight of the evidence.
"Sexual predator" is defined as a person who (1) has been convicted of or pleaded guilty to committing a sexually-oriented offense and (2) is likely to engage in the future in one or more sexually-oriented offenses. R.C. 2950.01(E). Before a court may adjudicate an offender as a sexual predator, it must find each of these elements established by clear and convincing evidence. R.C. 2950.09(B)(3). "Clear and convincing evidence" is a measure or degree of proof that is "more than a mere `preponderance of the evidence,' but not to the extent of such certainty as * * * `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990),55 Ohio St.3d 71, 74, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
When reviewing whether "clear and convincing" evidence supports the trial court's decision, we must examine the record and ascertain whether enough evidence existed to meet this burden of proof. See In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368. This type of review is deferential to the trial court. We will not overturn a trial court's judgment as against the manifest weight of the evidence, even where the burden is clear and convincing, if the record contains competent, credible evidence supporting its finding. Schiebel, supra,55 Ohio St.3d at 74-75; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80;C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
When determining whether an offender should be classified as a sexual predator, a court must consider all relevant factors, including those listed in R.C. 2950.09(B)(2). See R.C. 2950.09(C)(2)(b); see, also, Statev. Meade (Apr. 30, 1999), Scioto App. No. 98CA2566, unreported (stating that R.C. 2950.09[B][2] factors are designed to assist the court in making a sexual predator determination). The R.C. 2950.09(B)(2) factors are:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense * * *;
 (d) Whether the sexually oriented offense * * * involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense * * * displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
A court is under no obligation to "tally up" the R.C. 2950.09(B)(2) factors in any particular fashion. State v. Mollohan (Aug. 20, 1999), Washington App. No. 98CA13, unreported. A court may classify an offender as a "sexual predator" even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense. Id. Under proper circumstances, a court may properly designate an offender as a sexual predator even in the absence of expert testimony from the state. Meade, supra. But, see Statev. Moore (June 8, 2001), Hamilton App. No. C-000639, unreported noting the need for expert testimony in certain cases.
In this matter, the court found that appellant has been convicted of a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Appellant does not dispute that he was convicted of a sexually oriented offense; however, he contends that the evidence does not show that he is likely to engage in a sexually oriented offense in the future.
The sole witness at the sexual predator hearing was Detective Rex Emrick. Detective Emrick testified that he was assigned to investigate an act of sexual abuse against Kasey Wolfe, who was fourteen years old. Detective Emrick noted that Kasey is small in stature and speaks and acts in a manner such that she appears younger than she is. Kasey also attends special classes at school. Kasey told Detective Emrick that she was playing with her friend, Jonathan, who is eight years old, on Yellowbud Road. A man on a motorcycle approached them, said his name was Gene and asked if they wanted to take a ride. Gene gave the children rides up and down the road until Kasey's father observed them. Mr. Wolfe told Kasey to get off the motorcycle and that she was not to ride it anymore. Gene told Kasey to meet him at the other end of town and he would give her another ride. Kasey rode her bicycle to the north end of Yellowbud Road and met Gene.
Gene took Kasey on the motorcycle and traveled to a wooded area. Gene pulled Kasey's pants down and digitally penetrated her vagina for approximately five minutes. Kasey began crying and asked Gene to take her back to her mother. Gene then pulled his own pants down and placed Kasey's hand on his penis. After a few minutes, Kasey was able to pull her pants up and Gene pulled his pants up. Gene dropped Kasey off at her bicycle. Gene told Kasey not to say anything to anyone or he would do it again. He also told Kasey he would see her again the next day.
The following day, several people on Yellowbud Road observed Gene in the area on his motorcycle. Kasey's cousin followed the motorcycle, obtained the license plate number and provided the information to the Sheriff's Department. Detective Emrick ran the registration and identified appellant.
Detective Emrick spoke to appellant's nephew, Shane Mulford, and his roommate, John Harding. They told Detective Emrick that appellant was staying with them and that he had come back the evening of the assault and told them he met a girl on Route 104, picked her up, took her in the woods, and had sex with her. Appellant also told them she was only fourteen years old and he slapped her because she was crying.
On cross-examination, Detective Emrick testified that there was no evidence that appellant had been on Yellowbud Road other than those two days. Detective Emrick acknowledged that Shane Mulford has some mental or medical problems; however, his mother stated that as long as he takes his medication, he does not have a problem. Detective Emrick did not ask Mr. Mulford if he was taking his medication when he gave his statement.
On redirect examination, Detective Emrick testified that he is not aware of John Harding having any mental illnesses or medical problems and Mr. Harding provided the same information as Mr. Mulford. Detective Emrick testified that Kasey's mother noticed something was wrong with her when she came home. Kasey told her mother what had happened.
Following this testimony, the court stated that based on the evidence presented as well as the pre-sentence investigation report (PSI), it found appellant to be a sexual predator. The court noted that (1) there was a great disparity in age between the victim, who was fourteen years old, and appellant, who was fifty-one years old, (2) the victim was somewhat limited in her mental capacity, (3) appellant took advantage of the situation in that he knew he did not have permission to take the children on his motorcycle, (4) appellant threatened the victim that if she told, he would come back and do it again, (5) appellant returned to the area the following day, presumably to commit a similar act, and (6) appellant bragged to his nephew about what he had done.
Appellant submits that he has no other convictions for sexually oriented offenses, though he has a prior drug conviction and a conviction for domestic violence. Appellant also argues that there is no evidence of a "demonstrated pattern of abuse." Appellant contends that a single sexually oriented offense is insufficient to prove by clear and convincing evidence that the offender is likely to commit a sexually oriented offense in the future. Taken literally, this contention is correct.
"In determining an offender's propensity to commit future sex offenses, the trier of fact can use past behavior to gauge future propensity to commit crimes since past behavior is often an indicator of future violent tendencies." State v. Striley (Dec. 29, 1997), Clermont App. No. CA97-05-046, unreported, citing State v. Bartis (Dec. 9, 1997), Franklin App. No. 97APA05-600, unreported. While appellant has no prior convictions of a sexual nature, appellant's past conduct indicates a clear disregard for the law. Moreover, the trial court relied on the age and mentality of the victim, the age of appellant, appellant's "bragging" about what he had done, and the fact that appellant threatened the victim and returned to the scene the following day. The trial court can considerany relevant factors, whether they are specifically delineated in the statute or not. State v. McElfresh (July 12, 2000), Washington App. No. 99CA36, unreported. The record makes it clear that the court did not rely solely on the fact that the appellant had committed a sexually oriented offense in classifying him as a sexual predator.
Based on the additional factors addressed by the trial court, we conclude that there is competent, credible evidence to support the trial court's finding that appellant is likely to engage in one or more sexually oriented offenses in the future. Therefore, the court did not err in finding that appellant is a sexual predator. The first assignment of error is overruled.
 II.
In his second assignment of error, appellant argues that the court erred in imposing the maximum sentence of twelve months for obstructing official business. In his third assignment of error, appellant argues that the court erred in imposing a consecutive sentence for the obstructing official business charge without making the requisite factual findings.
After sentencing appellant for the sexual battery and corruption of a minor charges, the court made the following statements at the sentencing hearing:
 The court in case 2000-CR-075, finds again the defendant guilty of the offense of obstructing official business, and that while this is a felony of the fifth degree and again this is the first time this defendant served time in a state prison, the court is again of the opinion that the defendant is not amenable to community correction with respect to this offense, even though it is a felony of the fifth degree. The court is of the opinion an appropriate sanction in this case is twelve months. The court notes that is the maximum, the court is imposing the maximum sentence of twelve months in this case because the court finds that the defendant committed the worst form of the offense of obstructing official business. It doesn't get any worse than what you did here to Mr. Larson, Mr. Rich, in terms of your assaultive behavior. And therefore the court is imposing the maximum sentence in that case.
 The court is of the opinion that these sentences, these two cases will be served consecutive to each other. The reason for this is that the court is of the opinion that this is necessary to protect the public and punish the offender. It is not disproportionate to the conduct that a dangerous offender imposes. And the court also finds that the defendant's criminal history shows that the second terms are needed to protect the public and that the second crime the defendant committed here was clearly committed while he was awaiting trial with respect to the first crime in 99-CR-168. And the court therefore is of the opinion that consecutive prison terms, although are optional, are required in these cases and therefore will order Mr. Rich to serve each of these cases consecutive to each other. He will be ordered to pay court costs which execution is hereby awarded. That will be all.
Subsequently, the court issued a written sentencing entry that the court noted it had considered the factors under R.C. 2929.13(B) and found that appellant committed the offense of obstructing official business while awaiting trial. The court noted that a prison term was consistent with the purposes and principles of sentencing under R.C. 2929.11 and, pursuant to R.C. 2929.14(B), the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime by appellant. The court also noted that appellant committed the worst form of the offense. The court then sentenced appellant to twelve months for the conviction, to be served consecutively to his convictions in the earlier case.
 A.
First, we address appellant's contention that the court erred in sentencing him to the maximum prison term allowed for a felony of the fifth degree.
An offender who has received a maximum term of imprisonment has a statutory right to appeal the sentence. R.C. 2953.08(A)(1)(a). An appellate court may not reverse the sentence unless the court finds, by clear and convincing evidence, that the sentence is unsupported by the record or is contrary to law. R.C. 2953.08(G)(1)(a) and (d).
Once a trial court elects to impose a prison sentence, the shortest authorized prison term is presumed to be appropriate if the offender has not previously served a prison term. R.C. 2929.14(B). However, the trial court may impose a longer sentence if it finds that the shortest prison term will either (1) demean the seriousness of the offender's conduct, or (2) will not adequately protect the public from future crime. Id. Here, the trial court expressly found in its entry that the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime by appellant or others.
R.C. 2929.14(C) limits a trial court's authority to impose a maximum term of imprisonment. The statute prohibits a trial court from imposing the maximum term of imprisonment for an offense unless the trial court determines that the offender falls into one of four classifications.State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605, unreported;State v. Kauff (Nov. 9, 1998), Meigs App. No. 97CA13, unreported. Maximum sentences are reserved for those offenders who: (1) have committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. R.C. 2929.14(C). In its entry, the court specifically found that appellant committed the worst form of the offense.
Appellant contends that the trial court's imposition of the maximum sentence must be reversed because the court failed to comply with R.C.2929.19(B)(2)(d) which requires a court to make a specific finding that gives its reasons for selecting the maximum sentence. Appellant is correct that no such finding is included in the sentencing entry. However, we may also consider the court's oral pronouncements in determining whether the trial court complied with R.C. 2929.19(B)(2)(d). See State v. Edmonson (1999), 86 Ohio St.3d 324, 327; State v. Scheffler
(June 22, 2000), Licking App. No. 99CA73, unreported.
The only specific statement that the court made regarding why the maximum sentence was necessary for this offense was that "[i]t doesn't get any worse than what you did here to Mr. Larson, Mr. Rich, in terms of your assaultive behavior."
It would have been preferable for the court to have gone one step further to state that assaulting an attorney during a court proceeding before a jury is a worst form of the offense of obstructing official business because of the disruption of the court and the use of violence. However, we conclude that such a finding is both implicit and irrefutable in this context. Accordingly, we reject appellant's second assignment of error as meritless.
 B.
In his third assignment of error, appellant alleges that the court erred in imposing a consecutive sentence for the obstructing official business charge without making the requisite factual findings on the record. R.C. 2953.08(A)(4) affords a defendant an appeal as of right where the defendant contends the sentence is contrary to law. We review such a contention on a de novo basis under R.C. 2953.08(G)(1)(d).
In general, a prison sentence imposed by an Ohio court must run concurrently with any other sentence imposed by any other court in this country. R.C. 2929.41(A). However, a court may impose consecutive sentences under R.C. 2929.14(E)(4) when:
 * * * the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
The inquiry under R.C. 2929.14(E)(4) is a "tripartite procedure." Statev. Haugh (Jan. 24, 2000), Washington App. No. 99CA28, unreported. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender"; second, the court must find that the consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" he poses; and finally, the court must find that the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). Id. The verb "finds," as used in R.C. 2929.14(E)(4), means that the court "must note that it engaged in the analysis" required by the statute. See Edmonson, supra, at 326; State v. Brice (Mar. 29, 2000), Lawrence App. No. 99CA21, unreported.
Additionally, the court must comply with R.C. 2929.19(B)(2)(c) which requires that the sentencing court "make a finding that gives its reasons for selecting the sentences imposed * * * if it imposes consecutive sentences under section 2929.14 of the Revised Code." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Brice, supra. Thus, after a sentencing court has made the required findings under R.C. 2929.14(E)(4), it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. Id.; see, also, State v. Blair (Dec. 27, 1999), Scioto App. No. 98CA2588, unreported; State v. Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549, unreported; State v. Winland (Jan. 26, 2000), Wayne App. No. 99CA29, unreported.
At the sentencing hearing, the court made the first finding of the tripartite analysis, that consecutive sentences are necessary to protect the public and to punish the offender. Likewise, the court complied with the second section of the analysis, finding that the consecutive sentences were not disproportionate to the seriousness of the offender's conduct and the danger he poses. As required by the third prong, the court found that subsections (a) and (c) of R.C. 2929.14(E)(4) apply.
However, the court's finding that R.C. 2929.14(E)(4)(a) is applicable is erroneous. As we discussed in detail in State v. Blair (Dec. 27, 1999), Scioto App. Nos. 98CA2588 and 98CA2589, unreported, "R.C.2929.14(E)(4)(a) does not apply when a defendant commits a single new felony offense while awaiting trial or sentencing on a previous felony offense." Because appellant only committed one offense while awaiting trial, obstructing official business, he cannot be sentenced to consecutive terms under R.C. 2929.14(E)(4)(a). R.C. 2929.14(E)(4)(a) applies when a defendant commits "multiple offenses" while awaiting trial or sentencing. However, the trial court also found that R.C.2929.14(E)(4)(c) applies because appellant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public. Therefore, we conclude that the trial court complied with the third prong of the tripartite analysis.
We look now to the requirements of R.C. 2929.19(B)(2)(c), which concerns the reasons that support the trial court's R.C. 2929.14(E)(4) findings. We agree with the appellant that the sentencing entry alone does not satisfy R.C. 2929.19(B)(2)(c). However, at the sentencing hearing the court gave two reasons to support its findings and decision to impose consecutive sentences.
First, the court referred to the appellant's prior criminal history. The PSI reflects prior convictions for possession of hallucinogens, disorderly conduct (amended from domestic violence), OMVI, and menacing (amended from domestic violence).
Second, the court referred to the fact that appellant assaulted his attorney while the sexual abuse case was pending. While we concluded above that this fact does not satisfy R.C. 2929.14(E)(4)(a) requirements, it is an acceptable rationale under R.C. 2929.19(B)(2)(c).
While it is far more preferable for the sentencing entry to specifically address the reasons that support the court's finding under R.C. 2929.14(E)(4), we continue to believe that if the findings are discernable from the record, the court has complied with R.C.2929.19(B)(2)(c). See Blair, supra. We believe the appellant's criminal record and the nature of the assault of his appointed counsel are sufficient reasons to justify the court's R.C. 2929.14(E)(4) findings and to impose consecutive sentence. Because it is clear from our review of the record and the sentencing hearing that these were the reasons the court imposed consecutive sentences, we affirm the court's judgment.
Appellant's third assignment of error is meritless.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ABELE, P.J. EVANS, J.: Concur in Judgment and Opinion.